---

(87 Misc. Rep. 528)

### In re MILNOR'S ESTATE.

(Surrogate's Court, New York County. November 20, 1914.)

1. WILLS (§ 498*)—CONSTRUCTION—"ISSUE."
   The word "issue," when used in a will, and not otherwise explained or defined, refers to descendants generally.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1087–1089; Dec. Dig. § 498.*
   For other definitions, see Words and Phrases, First and Second Series, Issue.]

2. WILLS (§ 525*)—CONSTRUCTION—PER CAPITA DISTRIBUTION.
   The rule of per capita distribution, under a will, will yield to a very faint glimpse of a different intention on the part of the testator.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1129–1139; Dec. Dig. § 525.*]

3. WILLS (§ 498*)—CONSTRUCTION—ISSUE—DISTRIBUTION PER STIRPES OR PER CAPITA.
   Testatrix divided the residue of her estate among her children living at her death, and directed the trustees to appropriate one such share to "each of my said children and to the collective issue living at my death of each of my children who shall have died before me." By a succeeding subdivision she directed the trustees to pay over the income of each of her children during the life of that child, and on her death to pay the principal to her lawful issue, "so that the issue of each deceased child shall take the same share which their parent would have taken if living." *Held*, that the use of the word "parent" in connection with the word "issue" indicated an intent to benefit the children of a deceased child rather than more remote descendants, and that the word "issue" should be given its primary significance of "descendants," so as to include grandchildren only in the event of there being no children; and hence the distribution among children and grandchildren should be per stirpes, and not per capita.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1087–1089; Dec. Dig. § 498.*]

Judicial settlement of the accounts of the trustee under the will of Susan E. Milnor, deceased. Distribution decreed among testatrix's children and grandchildren per stirpes.

---

Geller, Rolston & Horan, of New York City, for trustee.

Winthrop & Stimson, of New York City (Charles T. Payne, of New York City, of counsel), for Alice G. Ransom and others.

Meyer & Henshaw, of New York City (Schuyler M. Meyer, of New York City, of counsel), for Mildred Gillet Sanford.

Harold E. Lippincott, of New York City, special guardian.

FOWLER, S. In this judicial settlement of the accounts of the trustee under the last will and testament of the deceased a question of the construction and interpretation of her will is presented by reason of the provisions of certain paragraphs thereof. The testatrix died June 18, 1901. Her last will and testament was dated June 12, 1901, and as admitted to probate by the Surrogate's Court of this county. Mrs. Milnor left her surviving four children, namely, Eleanor M. Goodrich, Susan V. Gillet, Alice Milnor, and Jeannette S. Milnor. She left her surviving no other child or children, and no issue of any deceased child or children. Eleanor M. Goodrich, one of the daughters, died on the 29th of May, 1908, leaving her surviving two children, namely, Eleanor G. Campbell, now Mrs. Davis, and Gladys Goodrich, now Gladys G. Belknap. Both of these children are now living, and neither of them have ever had any children. Susan V. Gillet, another daughter of the testatrix, died on the 29th of September, 1912, leaving her surviving six children, namely, Alice G. Ransom, Bertha G. Paterson, Jane H. G. Ketcham, Charlotte M. G. Adenaw, Langdon Gillet, Mildred Gillet, now Mildred G. Sanford, all of whom are now living, but no other children and no issue of any deceased child. At the time of the death of Susan V. Gillet, Alice G. Ransom, her daughter, had two children, namely, Alice M. Ransom and Halette Note Ransom, both of whom are still living. Bertha G. Paterson, another daughter, had one child, namely, Bertha G. Paterson, who is still living. Jane H. G. Ketcham, another child, had three children, namely, Morris Ketcham, Jr., Dorothy M. Ketcham and Elmslie G. Ketcham, all of whom are still living. Charlotte M. G. Adenaw, another daughter of Susan V. Gillet, had three children, namely, Charlotte L'Estrange Adenaw, Arthur P. F. Adenaw, Jr., and Natalie G. Adenaw, all of whom are still living. Langdon Gillet, a son of Susan V. Gillet, has never had any children, nor has Mildred Gillet Sanford, the other child. Alice Milnor and Jeannette S. Milnor, the other two daughters of the testatrix, have never married and have no issue.

Under the will of the testatrix, life estates for her four children were created, with remainder over, and the question now to be determined is whether the grandchildren of Susan V. Gillet, a deceased daughter of the testatrix, share with the children of Susan V. Gillet in the division of the remainder after the termination of the life estate of the latter. The seventh paragraph of the will of the testatrix creating these life estates and remainder interests, the provisions of which are sought to be interpreted, is as follows:

"Seventh. All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to my executors, in trust nevertheless for the following purposes, that is to say: (A) To divide the same into as many shares as the number of my children who shall be living at the time of my

death and the number of those who shall have died before me leaving issue living at my death, and to appropriate one such share to each of my said children who shall be living at the time of my death and to the collective issue living at my death of each of my children who shall have died before me, to hold, manage and invest the same, and collect the rents, issues and profits thereof, and (B) to pay over to each of my said children, during his or her life, the rents, issues and profits of one of such shares respectively, and upon his or her death to pay over the principal of said share to his or her lawful issue, and in case he or she shall die without leaving lawful issue living at the time of his or her decease, to pay over such principal to my other children, if any one shall then be living, and to issue of such of them, if any, as shall be dead, so that the issue of each deceased child shall take the same share which their parent would have taken if living. (C) To divide each of such shares appropriated to the collective issue living at my death of any of my children who may have died before me into as many parts as the number of persons constituting the issue to whom such share is appropriated, and semi-annually to pay over to each of the persons respectively constituting such issue, the rents, issues and profits accruing upon the part of such share held for him or her until he or she shall attain the age of twenty-one years, and thereupon, or upon his or her death before attaining that age, leaving issue surviving, to pay over to him or her or to his or her issue, as the case may be, the principal of such part of such share, or in case he or she shall die before attaining the age of twenty-one years, without leaving issue surviving, to divide the principal of such part of such share amongst the other persons constituting the collective issue of the same deceased child from whom he or she was descended, and if all the persons constituting such issue shall have died without leaving issue surviving them, then to pay over the principal of such share equally to my other children, if any, then living, and to the issue of such of them as may be dead, such issue to take the same portion as their parent would have taken if living."

[1] The decision rests upon the interpretation to be given to the word "issue" as used in this paragraph. It is quite true that the word issue when used in a will, and not otherwise explained or defined, refers to descendants generally. Schmidt v. Jewett, 195 N. Y. 486, 88 N. E. 1110, 133 Am. St. Rep. 815; Soper v. Brown, 136 N. Y. 244, 32 N. E. 768, 32 Am. St. Rep. 731. It is by reason of extrinsic facts sometimes an ambiguous term, and may comprehend all persons in the line of descent to any degree, or refer merely to children, depending upon the intent of the testator as derived from the context of the will. Palmer v. Horn, 84 N. Y. 516. If the word "issue" in this will is to be taken in its primary sense, as referring to descendants generally, a per capita distribution will thereby result between the grandchildren and the children; but does not the language of this paragraph of the will and the whole context thereof lean towards a stirpital distribution amongst the children of the testatrix and the issue of deceased children?

[2] The rule of a per capita distribution will yield "to a very faint glimpse of a different intention." Ferrer v. Pyne, 81 N. Y. 281. This will does not show any intention on the part of the testatrix to create such an inequality of distribution as would result from a per capita one between the several grandchildren of living children and the children themselves, and the distribution must therefore be per stirpes. Woodward v. James, 115 N. Y. 346, 22 N. E. 150.

[3] The word "issue" in this will should be given its primary significance of "descendants," so as to include grandchildren only in the event of there being no children. Analyzing the seventh paragraph of the will, we find that by subdivision A the testatrix divided her estate

into as many shares as the number of her children living at the time of her death, and directs the trustees to appropriate one such share to "each of my said children    *    *    *    and to the collective issue living at my death of each of my children who shall have died before me." By subdivision B testatrix directed the trustees to pay over the income of the trust fund to each of her children during the life of that child, and upon the death of that one to pay the principal to his or her lawful issue "so that the issue of each deceased child shall take the same share which their parent would have taken if living." The use of the word "parent" in connection with the word "issue" discloses an intention on the part of the testatrix to benefit the children of a deceased child rather than more remote descendants.

The Matter of the Farmers' Loan & Trust Co., 163 App. Div. 533, 148 N. Y. Supp. 574, is a case quite similar to this one now before me, and it was there held that the word "issue" should be construed as meaning children. Matter of Tenney, 104 App. Div. 290, 93 N. Y. Supp. 811, also held that the proper interpretation of the word "issue," as used in the will under consideration in that case, and similar to the one now before me, was to be taken as meaning "children," and not "descendants" generally. So, also, Rasquin v. Hammersley, 152 App. Div. 522, 137 N. Y. Supp. 578, affirmed 208 N. Y. 630, 102 N. E. 1112. The case of Riker v. Gwynne, 201 N. Y. 143, 94 N. E. 632, is not in point, for the facts in that case are not the same. In that case there were no children living, and the court, interpreting the intention of the testator, and for other reasons, held that descendants were included within the word "issue."

Each will must stand upon its own intent, and it is clear to me that the controlling intention of the testatrix throughout this will was to provide for a per stirpes and not a per capita distribution. The resulting distribution from any other construction would be unequal and unfair. The testatrix never intended that one of many grandchildren should take an equal share with a child.

I therefore hold that from the intention of the testatrix, as expressed in this will, the distribution should be per stirpes, and that the grandchildren are excluded from sharing therein where their parent is living. Proceed accordingly.