Joseph A. Cox, S.
The testator died on April 7, 1901 and by his will created a trust of his residuary estate for-the primary income benefit of his widow with secondary life estates' in favor of those of his children who survived his wife. He directed that upon their deaths the remainder of the secondary trusts pass “to the issue of such beneficiary in such shares and proportions as may be directed by the last will and testament of said beneficiary, or, in default thereof, to such issue share and share alike; if such beneficiary leave no issue surviving, I give and bequeath the same to my surviving children and the issue of any deceased child, per stirpes et non per capita.”
*731 The particular trust with which we are presently concerned is one which fell in upon the death of the testator’s daughter Elizabeth W. Dunscombe on August 2, 1959. She left a will in which she exercised the power of appointment in favor of her granddaughter Kathryn D. O’Neill and the latter’s living descendents in equal shares as to two thirds and in favor of her only child Duncan Dunscombe, father of Kathryn D. O’Neill, as to the balance. Duncan Dunscombe had made a series of assignments of his interest under the will of the testator representing, in the instruments of assignment, that he was the sole remainder-man of the trust of which Ms mother was the surviving life beneficiary. The assignments antedated the death of Mrs. Dunscombe and were recorded in this court. The assignor initially challenged their validity but has withdrawn his objections. It is the contention of the assignees of Duncan Dunscombe that the power granted by the testator’s will was limited in its exercise to an appointment to the children rather than to the grandchildren or more remote descendants of the donee of the power.
The word “ issue ” ordinarily is used to connote descendants in every degree in the absence of the expression of an intention upon the part of the testator that it be restricted to the children of the ancestor (Drake v. Drake, 134 N. Y. 220 ; Soper v. Brown, 136 N. Y. 244 ; Schmidt v. Jewett, 195 N. Y. 486 ; Central Hanover Bank & Trust Co. v. Pell, 268 N. Y. 354). The rule found recent expression in Matter of Good (304 N. Y. 110) where the court said (pp. 118AL19): “ Moreover, there is no doubt of the meaning of ‘ issue ’. It means descendants in every degree. As long ago as 1797 it was defined by the Chancellor as follows: ‘ In the common use of language as well as the application of the word ‘issue’ in wills and settlements it means all indefinitely.’ (Freeman v. Parsley [3 Ves. Jr. 421], supra, p. 423.) The word ‘ issue ’ is neutral, connoting neither a division per capita nor per stirpes.”
A will containing a provision quite analogous to the testamentary language under consideration in the case at bar was construed in Matter of Morgan (193 Misc. 405) where the power given to the income beneficiary was to dispose of the fund “ among her issue in such shares or proportions and or such lawful trusts as she may think proper.” In the Morgan ease the. court rejected a contention that the power permitted only an appointment of the fund between the two daughters of the donee and forbade a disposition which conferred bequests upon a grandchild of the donee.
A similar situation is found in Drake v. Drake (supra) where the power was one to appoint ‘ ‘ to all or any or either of the law *732 ful issue ” of three named persons “ in such shares and proportions as she may think best.” There the court said (p. 227): “ There is nothing in the context to restrict or qualify the sense in which the words lawful issue were used in the provision creating the power. By a careful examination of the will, it seems evident that it was drawn with care, and the terms employed advisedly used; and the fact that the testator has in some instances definitely expressed the effect to be given to the term ‘ lawful issue, ’ as used in those devices, furnishes no support to the suggestion that he intended its use in this grant of power otherwise than the apparent sense in which it was there used. In some other portions of the will that term was applied by him in devices to denote the course of devolution of the property devised, and in those eases issue were to take substitutionally. There does not seem to have been any such purpose in the creation of this power of appointment. In it are no words of limitation of the estate dependent upon representation or substitution. The discretion given to the donee was within certain lines unqualified in respect to the objects of the power. And by fair construction it seems to have been intended that she should exercise the power as to her should seem proper in view of the situation when in her judgment the time should arrive for its execution.”
The reasoning of the cited cases is fully applicable to the present will and, accordingly, it is held that the power to appoint to the “ issue ” of the donee “ in such shares and proportions as may be directed ’ ’ permitted appointment to one or more of the donee’s descendants of any degree and irrespective of the fact that there might be living a parent or ancestor in the same line of descent as a beneficiary of such appointment. It is held that the power was validly exercised.
A subsidiary question arises in connection with the exercise of the power because of the fact that the donee conditioned her gift to her grandchild and her great-grandchildren upon their releasing her son Duncan Dunscombe from all liability arising out of any agreement “ in which my said granddaughter, Kathryn D. O’Neill, or any of her descendants living at the. time of my death shall have any interest.” The reference is to a provision contained in a separation agreement to which Duncan Dunscombe had been a party in which he undertook to assign one third of all property he was to receive under the will of his grandfather, this testator, to a trustee for his own use for life with remainder upon his death to his daughter or her descendants. It has been mathematically demonstrated that the interest which passes to Mrs. O’Neill and her children by the exercise *733 of the power of appointment is greater than their combined interests under the terms of the separation agreement. If Mrs. O’Neill and the general guardian of the infant children consent to release Duncan Dunscombe from his obligations under the separation agreement they will perfect their rights to the legacies. The assignees of Duncan Dunscombe are entitled to be paid from that part of the appointed fund passing to Duncan Dunscombe under the will of the testator by virtue of the exercise of the power of appointment by his mother in his favor.
Submit decree on notice settling the account and construing the will in accordance with the foregoing.