OPINION OF THE COURT
Louis D. Laurino, S.
In this construction proceeding the court is asked to construe paragraph second of the decedent’s will to determine the manner in which distribution is to be made. Paragraph second reads: "All the rest, residue and remainder of my *720 Estate of whatsoever kind and nature and wherever situate, of which I shall die seized or possessed, or to which I may be entitled or over which I may have any power of disposition by will or otherwise, I give, devise and bequeath to my beloved husband, ray e. murphy and if he does not survive me, then in equal shares per stirpes to the issue of my children living at the time of my decease.”
The will was executed in 1962. The decedent died in 1978. Her husband predeceased her. At the time of her death the decedent was survived by two children, Roy Murphy, Jr., and Audry Zimmerman. Mrs. Zimmerman, wbo qualified as administratrix c. t. a. had five children living at the time of the decedent’s death, Susan, Barbara, Wayne, David and Carol. Some of these children were born prior to the execution of the will, some after. Mr. Murphy has two children, Roy Murphy, III, and Gail, both born prior to the execution of the will. Neither Mr. Murphy nor Mrs. Zimmerman had children who predeceased the testatrix, leaving descendants.
Mrs. Zimmerman, as administratrix c. t. a. has petitioned for a construction of the decedent’s will that would divide the residue into seven equal parts, one part to be given to each of the seven grandchildren of the decedent.
Roy Murphy, III, has filed an answer in which he contends that the residue was meant to be divided into two equal parts, one part to be paid equally to the children of Roy Murphy, Jr., and the other part to be divided equally among the five children of Mrs. Zimmerman.
The manner of distribution hinges on whether the phrase "per stirpes” refers to "children” or "issue”. If the reference is to "children” then Mr. Murphy’s position is correct. If the phrase modifies "issue”, the administratrix c. t. a. is correct.
"Issue” is defined in EPTL 1-2.10 which states:
"(a) Unless a contrary intention is indicated:
"(1) Issue are the descendants in any degree from a common ancestor.
"(2) The terms 'issue’ and 'descendants’, in subparagraph (1), include adopted children.”
Although the statutory definition first became effective in 1967 with the enactment of the EPTL, the definition contained in paragraph (1) of subdivision (a) was taken from common law (see Matter of Farmers’ Loan & Trust Co., 213 NY 168).
Thus where X, the testator, made a gift to the issue of Y, *721 and Y at the time of the testator’s death has a child A, and A in turn has a child B, and Y also had another child C who predeceased the testator, leaving two children D and E, it has been found at common law that A, B, D, and E are all issue and share equally in the legacy. (Cf. Matter of Cromwell, 80 Misc 606; Schmidt v Jewett, 195 NY 486; Soper v Brown, 136 NY 244.) Such a distribution would be per capita.
However, under common law the presumption favoring a per capita distribution would give way to " 'a very faint glimpse’ ” of a different intention (Matter of Durant, 231 NY 41, 46; Matter of Farmers’ Loan & Trust Co., supra; Matter of Union Trust Co. of N. Y., 170 App Div 176, affd 219 NY 537). In such a situation a per stirpes distribution would be directed. Under a per stirpes distribution in the example given above, A would receive one-half of the legacy, cutting off B, and D and E would divide the other half of the legacy, taking per stirpes through C.
Matter of Durant (supra) was decided on April 19, 1921. On April 30, 1921 section 47-a of the Decedent Estate Law which was applicable to the wills of persons dying after that date became effective. The section has been carried over to the present EPTL in section 2-1.2 and provides: "Whenever a disposition or distribution of property is made to 'issue’, such issue, if in equal degree of consanguinity to their common ancestor, take per capita, but if in unequal degree, per stirpes, unless a contrary intention is expressed.”
If, as the administratrix c. t. a. claims, the phrase "per stirpes” in paragraph second refers to "issue”, the will merely states the statutory presumption and as such the phrase "per stirpes” is superfluous.
If per stirpes refers to "children” in paragraph second, then the direction to pay equal shares to the issue would seem to call for a per capita distribution to the issue in each branch of the family, no matter what degree of consanguinity they have to the child of the decedent. This would clearly run counter to the presumption found in the statute unless the court were again to read the statutory presumption into the paragraph. Given these alternatives, the court must construe paragraph second in the manner which most simply follows the statutory presumption.
That the phrase "per stirpes” may become superfluous is not a stumbling block. Paragraph second contains a number of words which to a degree are superfluous. Thus, both "dev *722 ise” and "bequeath” are included in "give”, as "rest” is in "residue”.
So, too, if the phrase "living at the time of my decease” refers to issue it is superfluous since only living persons can take under a will. If the phrase modifies children, the words "per stirpes” must refer to "issue” since the issue of a child who predeceased the decedent could not take, as the child’s living at the time of decedent’s death is a condition precedent to his issue taking.
All the parties take the position that this phrase "living at the time of my decease” refers to issue. One of the reasons for this is that a black comma-like mark has appeared after the word children on all photographic copies of the will which have been supplied in connection with the probate proceeding and construction proceeding, and has been copied as a comma in all typewritten quotes from the will submitted by the parties.
It is interesting to speculate what whim of fate caused this mark to appear where it did on the original photographic copy —an impurity in the emulsion, a tiny insect crossing the page at the time the photostat was made, a speck of dust? The fact remains that no comma or other mark exists between the words "children” and "living” on the original will.
Based on all of the above, the court can only reach the conclusion that paragraph second calls for an equal distribution of the residuary estate among the seven grandchildren.