THOMAS POOLE SOPER et al., Appellants, *v.* GEORGE W. BROWN, as Trustee, etc., Respondent.

The word "issue" in a deed or will, where used as a word of purchase, and where its meaning is not defined by the context and there are no indications that it was used in any other than its legal sense, comprehends all persons in the line of descent from the ancestor and so has the same meaning as "descendants."

The will of P. devised a farm to trustees in trust for four of his daughters for life in specific parcels upon separate trusts. The remainder embraced in the trust for each was devised as follows: "Upon the death of my said daughter  *  *  *  my further will is that the aforesaid (lands) in this clause of my will devised for the use and benefit of my said daughter  *  *  *  shall go in fee simple as tenants in common to the lawful issue of my said daughter  *  *  * share and share alike and for want of or in default of such issue, then

to all my grandchildren who may then be living." E., one of the daughters had two children, both of them died before their mother leaving children, and of her descendants there were living at her death five grandchildren and three great grandchildren. In an action of eject-ment to recover the land held in trust for E., plaintiffs, who were grand-children of the testator, claimed that E. left no "issue" surviving her, and that, therefore, the gift over to the testator's grandchildren took effect. *Held*, untenable; that the gift over to grandchildren afforded no definite indication of a purpose to restrict the meaning of the word "issue" in the primary gift to children; and so, that the descendants of E. had title to the land in suit.

*Sibley* v. *Perry* (7 Ves. 522); *Palmer* v. *Horn* (64 N. Y. 578), distinguished. Reported below, 65 Hun, 155.

(Argued December 2, 1892; decided December 13, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 22, 1892, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit without a jury.

This was an action of ejectment to recover a lot in Brooklyn, part of a farm of which Thomas Poole died seized. Both parties claimed title under the will of said decedent, the material portion of which, as well as the facts, are set forth in the opinion.

*George H. Adams* for appellants. The term issue may be used either as a word of purchase or of limitation, but it is generally used by the testator as synonymous with child or children. (4 Kent's Comm. 278; *Palmer* v. *Horn*, 84 N. Y. 516, 519; *Taft* v. *Taft*, 3 Dem. 86; *Ralph* v. *Carrick*, L. R. [11 Ch. Div.] 873; *Palmer* v. *Dunham*, 125 N. Y. 68; *Bron-son* v. *Murray*, 1 Dem. 217.) "Issue" in this will means "children." (*Palmer* v. *Horn*, 84 N. Y. 516.) The con-tention is made that upon the death of Poole, a remainder vested at once in the children of Eliza. Such a result, cer-tainly, was not the intention of the testator, nor is there any rule of law which will support that claim. (*Walker* v. *Rey-nolds*, 123 N. Y. 211; *Nelson* v. *Russell*, 61 Hun, 528; *Camp* v. *Cronkright*, 59 id. 488.)

*Josiah T. Marean* for respondent.   While the word " issue "
has no hard and fast meaning which excludes the possibility of
its use in any other sense, there can be no doubt that its tech-
nical meaning, its meaning when it stands alone, in a will or
a deed, is " descendants."   It is only when the context or some
extrinsic fact proper to be considered indicates its use in
another sense that any other meaning can be attributed to it.
(*Palmer* v. *Horn*, 84 N. Y. 516 ; *Patchen* v. *Patchen*, 121
id. 434 ; *Gelston* v. *Shields*, 78 id. 275.)   When a testator
does himself define an expression which he has used, courts
must give it meaning according to that definition.   (*Palmer*
v. *Horn*, 84 N. Y. 516.)   It is a controlling rule in the con-
struction of wills, that where a provision is capable of two
constructions, one of which will work the disherison of legiti-
mate lineal descendants, and the other will not, that the latter
must be adopted.   (*Low* v. *Harmony*, 72 N. Y. 414 ; *Scott* v.
*Gurnsey*, 48 id. 106 ; *Prowett* v. *Rodman*, 37 id. 41 ; *In re
Brown*, 93 id. 299 ; *In re Paton*, 111 id. 480 ; *Byrnes* v.
*Stillwell*, 103 id. 453–460 ; *Goebel* v. *Wolf*, 113 id. 405.)   But
let it be assumed for the purpose of the argument that " issue "
in this will means " children."   Upon that assumption the
case is taken out of the statute which provide: that a limita-
tion over upon the death of the first taker without issue, shall
be construed to mean without issue living at the time of such
death.   That statute applies only to a case where issue is used
in its technical sense of descendants generally.   (*Tucker* v.
*Bishop*, 16 N. Y. 402, 404 ; *Collin* v. *Collin*, 1 Barb. Ch.
636 ; 2 Jarman on Wills [5th Am. ed.] 704 ; *In re Brown*,
93 N. Y. 299 ; *Byrnes* v. *Stillwell*, 103 id. 453 ; *Goebel* v.
*Wolf*, 113 id. 405.)

ANDREWS, J.   Thomas Poole died in 1831, leaving surviv-
ing him five daughters, Letitia, Eliza, Mary, Sarah and
Margaret.   At his death he owned a farm in what is now the
city of Brooklyn.   By his will, after giving a small legacy to
his daughter Letitia, he devised his farm in specific parcels to
trustees upon separate trusts for the benefit of his four daugh-

ters, Eliza, Mary, Sarah and Margaret respectively for life. The remainder embraced in the trust for his daughter Eliza was devised in the language following: "Upon the death of my said daughter Eliza, my further will is that the aforesaid (lands) in this clause of my will devised for the use and benefit of my said daughter Eliza, with the appurtenances thereunto belonging, shall go in fee simple as tenants in common to the lawful issue of my said daughter Eliza, if more than one, share and share alike, and for want or in default of such issue, then to all my grandchildren who may then be living, as tenants in common, his, her or their heirs or assigns forever." The remainders in the lands devised in trust to his other daughters for life are given in similar language. The daughters Letitia, Eliza and Mary were married at the time of the making of the will and at the death of the testator, and the daughters Letitia and Eliza each had children. The two children of Eliza died after the death of the testator and before the death of their mother, but each left children surviving her, and on the death of the testator's daughter Eliza there were living two children of a deceased son of Eliza, three children of Eliza's deceased daughter Margaretta, and three children of a deceased child of Margaretta. The descendants of Eliza living at her death were, therefore, five grandchildren and three great-grandchildren.

The plaintiffs are children of the testator's daughter Letitia, and claim a share of the lands embraced in the trust constituted by the will of Thomas Poole for the benefit of his daughter Eliza, on the ground that Eliza left no "issue" surviving her at her death, and that, therefore, the gift over, for the want or in default of such issue to "all the (testator's) grandchildren," took effect. This claim, if well founded, excludes the descendants of Eliza from any share in the property of the testator since none of them stood in the relation of grandchildren to the testator Thomas Poole, and the whole of Eliza's portion will be diverted from her line and go to children of her sisters.

The question turns upon the meaning of the word "issue" in the gift in remainder "to the lawful issue of my said

daughter Eliza." It is insisted on the part of the plaintiff
that the word means "children," and that the testator's inten-
tion was to provide for his grandchildren only, and to cut off
on the death of any daughter all in the line of descent from
such daughter who were not in that relation to the testator.
This contention, which naturally shocks the sense of justice,
must be maintained if required by settled rules of construction.
They cannot be varied to meet a supposed hardship in a par-
ticular case, although the court would be justified in searching
the will to discover, if possible, some explanatory or qualifying
provision which would indicate that particular words were
used in a sense consistent with what seems to be, under the
circumstances, the natural intention and the ordinary dictates
of feeling and affection. It is claimed that the word "issue"
used in a will, when unexplained by the context, has the
meaning of "children." If this predicate is justified it bears
strongly in favor of the construction claimed by the plaintiffs,
for it must be admitted that there are but very slight indica-
tions, if any, in the will, that the word was used in any other
than its legal sense. But I am of opinion that the word
"issue" in a deed or will, when used as a word of purchase
and where its meaning is not otherwise defined by the context,
and there are no indications that it was used in any other
than its legal sense, comprehends all persons in the line of
descent from the ancestor and has the same meaning as
"descendants," and that while it embraces the children of
the ancestor, it is because they are descendants in common
with all other persons who can trace direct descent from
a common source. It is common learning that this has
been the accepted meaning of the word "issue" in that
large class of limitations to issue of the first taker, accom-
panied with a gift over in default of issue. The question
in these cases, which has given rise to a mass of abstruse and
difficult learning, has been whether in particular deeds or
wills, an indefinite failure of issue was intended, which would
render the gift over void as a perpetuity, or a failure of issue
living at the death of the first taker, or on the happening of

some other event within the period allowed by law for restraint of alienation. In this state the statute has wisely solved these distressing perplexities and makes a limitation over to issue on the death of the first taker, to mean issue living at his death (1 Rev. St. 724, § 22). But it was never contended so far as I know in these cases that the word "issue" means "children" to the exclusion of remoter descendants.

There are many authorities on wills, in which the word has been construed to mean "children" only. These authorities rest upon the undisputed principle that words used by a testator in his will are to be interpreted in the sense which he attributed to them, where it appears by the context that they were not used in their strict legal sense. It is but one of the applications of the doctrine that in the construction of wills the intention of the testator is to govern when not inconsistent with the rules of law. In *Sibley* v. *Perry* (7 Ves. 522), the word "issue" was held to mean "children," because coupled with and used as the antithesis of the word "parent," but Lord ELDON, while reaching this conclusion upon the words of the particular will, said: "Upon all the cases this word (issue) *prima facie* will take in all descendants beyond immediate issue." *Palmer* v. *Horn* (84 N. Y. 516), was a case of the same character, where the word "issue" was held to mean "children," from its juxtaposition with the latter word, which explained and limited it. Mr. Jarman and other text writers state the rule in conformity with the great weight of authority, that while the meaning of the word "issue" is not inflexible, and may in some cases designate "children" only, depending upon the intention as disclosed upon the whole instrument, nevertheless where its meaning is not restrained by the context, it is to be interpreted as synonymous with "descendants," and as comprehending objects of every degree, and that the construction is the same whether used in a bequest or devise (2 Jar. on Wills, 101; 2 Wms. on Exrs. 1112; 2 Wash. on Real Prop. 561). In the early case of *Cook* v. *Cook* (2 Vern. 545), which was the case of a devise to the issue of J. S., it was held that children and grandchildren were comprehended.

It is urged that the popular meaning of the word "issue" is synonymous with child or children. If this were admitted it would not control the construction of a formal will, where words are supposed to be used in their legal sense in the absence of a contrary indication. In a note in Kent's Commentaries (Vol. 4, p. 278), said to have been written by the author, it is stated that the word "issue" is generally used as synonymous with child or children, and in *Ralph* v. *Carrick* (11 Ch. Div. 882), James, L. J. remarks that this was its popular meaning. But with great respect I am not sure that this is correct as a general proposition It is very unusual I think for a parent to speak of his children as his issue, either during life or in a testamentary instrument. When one speaks of the "issue" of a person deceased, I think in most cases he would intend his descendants in every degree. In popular language if one speaks of the issue of a marriage, he probably means the children of the marriage. The collocation of the words "issue" and "marriage" makes this in the case supposed the natural meaning. It was said by Lord Loughborough in *Freeman* v. *Parsley*, (3 Ves. 421) that "in the common use of language as well as in the application of the word "issue" in wills and settlements, it means all indefinitely." This seems to me to be nearer the truth than the opposite view, or at least I am of the opinion that in the majority of cases where the word "issue" is used, it is used in its legal sense. There are cases where it may be conjectured that this broad meaning would produce a result not contemplated by a testator. It is settled that under a gift to "issue," where the word is used without any terms in the context to qualify its meaning, the children of the ancestor and the issue of such children, although the parent is living, as well as the issue of deceased children, take in equal shares *per capita* and not *per stirpes*, as primary objects of the disposition. It might well be doubted whether a testator actually contemplated that the children of a living parent would take an equal interest with the parent under the word "issue," or that the issue of a

deceased child should not take by representation the share of its parent. Lord Loughborough referred to this in *Freeman* v. *Parsley* (*supra*), and while he held that all were entitled equally *per capita*, said that he expected that it was contrary to the intention, and regretted that there was no medium between the total exclusion of the grandchildren and admitting them to share with their parents. But in a case like the present one, where there is a gift to a child for life and over on the death of such child in default of issue, it would be an unnatural construction which would exclude all but the immediate children of the first taker, in favor of the other branches of the family. The reasonable construction in such cases is that the gift over was intended to take effect only on the extinction of the line of descent from the first taker. We perceive no sufficient indication in the will now in question which would justify overriding the legal meaning of the word "issue," and confining it to the sense of "children." The fact that the gift over in default of issue of any child, was to "grandchildren," and that remoter descendants could not take under this limitation, is quite indecisive. The testator may have considered that he had made the sufficient provision for the remote descendants of his daughters in providing that their issue should take the portion of the ancestor, and that in providing for the contingency of the death of any one of these without issue, it was not necessary or desirable to have regard to any except grandchildren. Whatever may have influenced the testator in confining the gift over to grandchildren, this affords no definite indication of a purpose to restrict the meaning of the word "issue" in the primary gift. The same remark is applicable to the gift of the residuary personal estate to his grandchildren on the death of the last survivor of his four daughters.

The will received we think a proper construction in the courts below. Even if the construction given may be doubtful, it is a settled rule that where a will is capable of two constructions, one of which would exclude the issue of a deceased child, and the other permit such issue to participate in a

remainder limited upon a life estate given to the ancestor, the latter should be adopted. (*In re Brown*, 93 N. Y. 295, and cases cited.)

The judgment should be affirmed.

All concur.

Judgment affirmed.